## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TERRICK SULLIVAN, *on behalf of himself and others similarly situated*, | |
| Plaintiffs, | CIVIL ACTION NO. |
| v. | |
| COURIER CONNECTION, INC. AND JOHN F. LAUTH, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Named Plaintiff Terrick Sullivan, by and through undersigned counsel, brings this action on behalf of himself and others similarly situated against Courier Connection, Inc., ("Courier Connection") and John F. Lauth ("Lauth") (collectively "Defendants") and states and alleges as follows:

### NATURE OF THE ACTION

1.     This is a collective action brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA"), alleging that Defendants fail to pay Named Plaintiff and others similarly situated at the federally-mandated overtime premium rate for hours worked over 40 per workweek.

2.     Named Plaintiff Sullivan files this collective action on behalf of himself

and other similarly-situated local delivery drivers employed by Defendants in and around Atlanta, Georgia within the last three years preceding the filing of this Complaint.

## PARTIES

3.　Defendant Courier Connection is a Georgia corporation with its principle office located at 4151 Ashford Dunwoody Road, Suite 260 Atlanta, Georgia 30319, according to the Georgia Secretary of State.

4.　Courier Connection may be served through its registered agent, Duane Kasmarik, 4151 Ashford Dunwoody Road, Suite 260 Atlanta, Georgia 30319.

5.　Defendant Lauth is the Chief Financial Officer, Secretary, and Chief Economic Officer of Defendant Courier Connection.

6.　Defendant Lauth is an individual who may be served wherever he may be found.

7.　Named Plaintiff and others similarly situated worked for Defendants as local delivery drivers in and around Atlanta, Georgia within the three years preceding the filing of this lawsuit.

8.　Named Plaintiff consented in writing to join this action pursuant to 29 U.S.C. § 216(b). (*See* Exhibit 1.)

9.　Other similarly situated individuals are interested in joining this action.

10.     For example, Opt-in Plaintiff Levante Watkins ("Opt-in Plaintiff Watkins"), Opt-in Plaintiff Darshell Rivers ("Opt-in Plaintiff Rivers"), and Opt-in Plaintiff Henri Walton, Jr. ("Opt-in Plaintiff Walton") filed consent forms to join this lawsuit (Named Plaintiff and Opt-in Plaintiffs collectively "Plaintiffs"). (*See* Exhibits 2, 3 and 4.)

## JURISDICTION AND VENUE

11.     The Court exercises jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the claims raise questions of federal law.

12.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Atlanta Division of the Northern District of Georgia.

## FACTUAL ALLEGATIONS SHOWING THAT DEFENDANTS ARE JOINT EMPLOYERS

13.     Defendants are employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

14.     Courier Connection engages in commerce and employs two or more individuals who work on goods or materials that have been moved in or produced for interstate commerce.

15.    Courier Connection provides its employees with cellular phones manufactured outside the state of Georgia that employees use while performing their job duties.

16.    Courier connection provides its local delivery drivers company cargo vans which are manufactured outside the state of Georgia and used by its employees while performing their job duties.

17.    Courier Connection's employees use the phone and internet to communicate across state lines while performing their job duties.

18.    Courier Connection's gross annual sales or business done exceeds $500,000.

19.    Courier Connection employed Plaintiffs.

20.    Courier Connection had the authority to set the employment polices applicable to Plaintiffs.

21.    Courier Connection had the authority to modify the employment practices applicable to Plaintiffs.

22.    Courier Connection had the authority to set the compensation practices applicable to Plaintiffs.

23.    Courier Connection had the authority to change the compensation practices applicable to Plaintiffs.

24.     Courier Connection had the authority to hire and fire Plaintiffs.

25.     Defendant Lauth is the Secretary, Chief Economic Officer and Chief Financial Officer of Courier Connection.

26.     Lauth exercises operational control over Courier Connection.

27.     Lauth determines the compensation practices applicable to Courier Connection employees, including Plaintiffs.

28.     Lauth has the authority to modify the compensation practices applicable to Courier Connection employees, including Plaintiffs.

29.     Lauth has the authority to determine the employment policies and to modify the employment policies applicable to Courier Connection employees, including Plaintiffs.

30.     Lauth has the authority to hire and fire Courier Connection employees, including Plaintiffs.

31.     Lauth employed Plaintiffs.

32.     Lauth and Courier Connection jointly employed Plaintiffs.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFFS' CLAIMS

33.     Defendants employ local delivery drivers who drive company-owned cargo vans and make deliveries of packages to residential and business locations in and around Atlanta, Georgia ("Local Delivery Drivers").

34.     The company-owned cargo vans driven by Local Delivery Drivers to make deliveries have a gross vehicle safety rating of less than 10,000 pounds.

35.     Defendants employed Plaintiffs and others similarly situated as Local Delivery Drivers.

36.     Defendants pay Local Delivery Drivers a flat rate per day.

37.     For example, Defendants paid Named Plaintiff Sullivan $141 per day.

38.     Defendants paid Opt-in Plaintiff Rivers $141 per day.

39.     Local Delivery Drivers are typically scheduled to work 4 to 6 days per week.

40.     For example, Named Plaintiff Sullivan often worked 5-6 days per week.

41.     Opt-in Plaintiff Watkins typically worked 5-6 days per week.

42.     Opt-in Plaintiff Rivers typically worked 4 days per week.

43.     Local Delivery Drivers are typically scheduled to deliver packages 10 hours per day.

44.     For example, Local Delivery Drivers are scheduled to make deliveries between the hours of 8:30 a.m. and 6:30 p.m.

45.     Local Delivery Drivers typically work more than 40 hours per week.

46.    When Local Delivery Drivers, such as Plaintiffs Watkins and Sullivan, are scheduled to work more than 4 days per week, their scheduled hours necessarily exceed 40 per week because each shift is 10 hours long.

47.    Even when Local Delivery Drivers are only scheduled to work 4 days per week, they typically work more than 40 hours per week.

48.    For example, Local Delivery Drivers are required to report to a central warehouse location each morning before making deliveries.

49.    Local Delivery Drivers must report to the central warehouse between 7:30 a.m. and 8:00 a.m.

50.    Local Delivery Drivers must meet at the warehouse between 7:30 a.m. and 8:00 a.m. to pick up the company van, load the van with packages to be delivered, attend morning meetings, receive instructions from their managers, and receive their daily delivery routes.

51.    Furthermore, even when Local Delivery Drivers complete their daily deliveries by 6:30 p.m., Local Delivery Drivers must continue working.

52.    For example, on many occasions when Local Delivery Drivers complete their daily deliveries, Defendants require Local Delivery Drivers to make deliveries for other Local Delivery Drivers.

53.    For example, on certain occasions when Named Plaintiff Sullivan completed his daily deliveries by 6:30 p.m., Defendants required him to load another Local Delivery Driver's packages onto his van and continue delivering packages.

54.    By way of further example, even when Local Delivery Drivers complete their daily deliveries by 6:30 p.m., Local Delivery Drivers must stop and refuel the company van before returning to the warehouse.

55.    After refueling the company van, Local Delivery Drivers must return to the warehouse.

56.    After returning to the warehouse, Local Delivery Drivers must unload any undeliverable packages from the vans.

57.    After returning to the warehouse, Local Delivery Drivers must notify their managers of any undeliverable packages.

58.    After returning to the warehouse, Local Delivery Drivers must clean out the company vans.

59.    In addition, Local Delivery Drivers are often unable to complete their daily deliveries by 6:30 p.m.

60.    For example, Local Delivery Drivers are often ready to commence delivering packages in the mornings when they arrive at the central warehouse, but the packages are not ready to be loaded into the vans.

61.     Local Delivery Drivers are often unable to start making deliveries until approximately 9:30 a.m.

62.     Local Delivery Drivers are often unable to deliver a package on the first attempt, requiring Local Delivery Drivers to go back to the customer's location a second time.

63.     Local Delivery Drivers often get stuck in traffic and are unable to complete their deliveries until after 6:30 p.m.

64.     Consequently, Local Delivery Drivers often work more than 40 hours per week, even when they are only scheduled to work 4 days per week, 10 hours per day.

65.     Defendants know that Local Delivery Drivers work more than 40 hours per workweek.

66.     For example, Local Delivery Drivers write down the time they arrive at the warehouse each morning and the time they return to the warehouse each evening.

67.     However, Defendants fail to pay Local Delivery Drivers 1.5 times their regular rate of pay for all hours worked over 40 per week.

68.     Defendants pay Local Delivery Drivers the same flat rate regardless of the number of hours worked by Local Delivery Drivers.

69.     Defendants pay Local Delivery Drivers the same flat rate regardless of the number of packages delivered by Delivery Drivers.

70.     Defendants' practice of not paying Local Delivery Drivers 1.5 times their regular rate of pay for all hours worked over 40 per workweek violates the FLSA.

71.     Defendants do not keep accurate time records of the hours worked by Local Delivery Drivers.

72.     For example, Defendants do not permit Local Delivery Drivers to record the hours they spend working at the warehouse unloading Defendants' vans, cleaning Defendants' vans, and processing undeliverable packages.

## COUNT 1: WILLFUL FAILURE TO COMPENSATE PLAINTIFFS AT THE REQUIRED OVERTIME PREMIUM RATE

73.     Local Delivery Drivers work more than 40 hours per week.

74.     However, Defendants fail to compensate Local Delivery Drivers for all hours worked over 40 per week at 1.5 times Local Delivery Drivers' regular rate of pay.

75.     Defendants know or should know that Local Delivery Drivers work more than 40 hours per week.

76.     By failing to compensate Local Delivery Drivers at 1.5 times their regular rate of pay for all hours worked over 40 per week, Defendants violated, and continue to violate, Local Delivery Drivers' rights under the FLSA.

77.     Defendants' violation of the FLSA's overtime provisions is willful.

78.     Defendants fail to use reasonable efforts to determine whether Local Delivery Drivers are paid at the correct rate for their overtime hours as mandated by the FLSA.

79.     Defendants know Local Delivery Drives work more than 40 hours per week.

80.     Defendants know that Local Delivery Drivers are not exempt from the overtime provisions of the FLSA.

81.     However, Defendants choose not to pay Local Delivery Drivers 1.5 times their regular rate of pay for all overtime hours worked in a workweek.

82.     Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Local Delivery Drivers for unpaid overtime wages, liquidated damages, attorney fees and costs.

83.     Defendants' violation of the FLSA demonstrates a reckless disregard for Local Delivery Drivers' rights under federal law.

## DEMAND FOR JUDGMENT

Plaintiffs request that the Court:

(a)   Declare that Defendants' actions, policies, and practices complained of herein violate the rights of Plaintiffs as secured by federal law;

(b)   Enter judgment against Defendants that their violations of the FLSA were willful;

(c)   Enter judgment that Defendants are jointly and severally liable for their violations of the FLSA;

(d)   Award all unpaid wages;

(e)   Award liquidated damages in an amount equal to Plaintiffs' unpaid wages;

(f)   Award reasonable attorney fees, costs, and expenses; and

(g)   Award all other relief to which Plaintiffs may be entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury.

Respectfully submitted: November 20, 2017.

*s/Dustin L. Crawford*

POOLE HUFFMAN LLC
315 W. Ponce de Leon Ave., Suite 344
Decatur, Georgia 30030
Telephone:   (404) 855-3002
Facsimile:    (888) 709-5723
dustin@poolehuffman.com
john@poolehuffman.com

Dustin L. Crawford
Georgia Bar No. 758916
John L. Mays
Georgia Bar No. 986574


Counsel for Plaintiffs