**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| TERRICK SULLIVAN, *on behalf of himself and others similarly situated*,<br><br>        Plaintiffs,<br><br>v.<br><br>COURIER CONNECTION, INC.; CC LAST MILE LLC; and JOHN F. LAUTH,<br><br>        Defendants. | CIVIL ACTION NO.<br>1:17-cv-04655-MLB |

## <u>MEMORANDUM OF LAW IN SUPPORT OF SECOND JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT AND DISMISSAL OF CASE WITH PREJUDICE</u>

Plaintiff Terrick Sullivan, the thirty-one plaintiffs who have opted into this action by filing consents to join (together with Plaintiff Sullivan, "Plaintiffs") and Defendants Courier Connection, Inc., CC Last Mile, LLC, and John Lauth ("Defendants") (Plaintiffs and Defendants collectively referred to as the "Parties"), by and through their undersigned counsel, hereby submit their Memorandum of Law in Support of their Second Joint Motion for Approval of FLSA Collective Action Settlement Agreement and Dismissal of Case with Prejudice ("Joint Motion"). The Parties have reached a settlement that would resolve the claims raised in this

proceeding.  The executed settlement agreement is attached hereto as **Exhibit 1** (the "Settlement Agreement").  The Parties have agreed that the terms reflected in the Settlement Agreement are mutually satisfactory and represent a fair and reasonable compromise of the claims asserted in this action, and are in the best interests of the Parties.  The Parties hereby submit the Settlement Agreement for approval by the Court, pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982), and respectfully request that the Court enter the Proposed Order: (1) approving the Parties' Settlement Agreement; (2) dismissing this action with prejudice; and (3) retaining jurisdiction over this case to enforce the Parties' Settlement Agreement until final payment of the settlement proceeds are received by Plaintiffs' counsel.

## CASE SUMMARY AND BACKGROUND

On November 20, 2017, Plaintiff Terrick Sullivan filed a collective action Complaint against Courier Connection, Inc. and John Lauth on behalf of himself and those similarly situated arising from his employment as a delivery driver for CC Last Mile, LLC. (ECF No. 1.)  On January 24, 2018, Plaintiff filed a First Amended Complaint, which added CC Last Mile, LLC as a defendant and asserted a claim against Defendants for an alleged failure to pay overtime under the Fair Labor Standards Act ("FLSA"). (ECF No. 8.)

Rather than engage in discovery, and to avoid the expense and distraction associated with motion practice at the preliminary stage of condition certification, on July 6, 2018, the Parties filed a Stipulation and Joint Motion for Conditional Certification of a Collective Action under the FLSA specifically for the purpose of trying to see if the Parties could resolve the lawsuit. (ECF No. 20.)  The Court granted the Joint Motion for Conditional Certification on July 16, 2018. (ECF No. 21.)  The notice period closed on October 22, 2018.  Thirty-one individuals submitted consents to join during the notice period, such that this action now has a total of thirty-two plaintiffs including Plaintiff Sullivan.

On March 19, 2019, the Parties engaged in a mediation session under the direction of experienced mediator Richard Gerakitis, Esq., and continued their negotiations for several weeks thereafter.  These negotiations ultimately culminated in a settlement in principle and provided the framework for reaching and agreeing to the Settlement Agreement.

## SETTLEMENT TERMS

After first reaching an agreement on the amount to be paid to each Plaintiff to resolve Plaintiffs' claims, the Parties separately negotiated payment of the Plaintiffs' attorney's fees, expenses and costs associated with the prosecution of the claims in this action. Pursuant to the terms of the Settlement Agreement, the Parties have

agreed to resolve the wage claims of the thirty-two Plaintiffs in this action for the total sum of seventy-eight thousand dollars ($78,000.00).  This amount was reached only after several weeks of arms-length negotiations, a mediation, and post-mediation discussions.  It represents the maximum amount that Defendants will pay as part of the settlement, inclusive of all payments to the Plaintiffs, the proposed service payments, and the proposed payment to Plaintiffs' counsel for attorneys' fees, costs and expenses.

The collective payments negotiated for the individual Plaintiffs will total the gross amount of $29,856.87, inclusive of the proposed service awards to named Plaintiff Terrick Sullivan and Plaintiff Darshell Rivers.  The amounts due to each Plaintiff will be allocated as a $1,500.00 service award to named Plaintiff Terrick Sullivan, a $1,000.00 service award to Plaintiff Darshell Rivers, $50.00 for the general release of claims, 50% for alleged unpaid wages and 50% for alleged liquidated damages.  The list of proposed individual settlement payments to the thirty-two Plaintiffs is attached to the Settlement Agreement as **Exhibit A**, payment of which is contingent upon Defendants receiving the requisite IRS Form W-9 from each Plaintiff and each Opt-In Plaintiff signing the release at **Exhibit B** to the Settlement Agreement.

The Settlement Agreement also provides for a payment by Defendants directly to Plaintiffs' counsel in the amount of $48,143.13 for the resolution of Plaintiffs' claims for attorneys' fees, expenses, and costs incurred in this litigation. After first reaching an agreement as to the amount to be paid to resolve Plaintiffs' claims for alleged damages, the Parties separately negotiated payment of the Plaintiffs' attorneys' fees, expenses and costs associated with the prosecution of the claims in this action. The Parties further represent that they negotiated a compromise in the amount of attorneys' fees and costs to be paid to Plaintiffs, and that this compromise represents a fair and reasonable resolution of the amount of attorneys' fees, costs and expenses sought by Plaintiffs.

### STANDARD FOR APPROVAL OF SETTLEMENT AGREEMENT

In order to have an enforceable settlement and release of FLSA claims in the Eleventh Circuit, a court or the Secretary of Labor must review and approve agreements settling alleged violations of the FLSA that involve a compromise of the wages owed. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1352-55. If the district court approves the proposed settlement "after scrutinizing the settlement for fairness," the court may enter a stipulated judgment. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353 (citations omitted). For the reasons explained below, the Parties respectfully request that the Court approve the terms and conditions of their proposed settlement and

enter an order dismissing this action with prejudice.  The Proposed Order is filed concurrently with the Joint Motion.

In evaluating the fairness of a proposed settlement of overtime claims, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355; *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1226 (M.D. Fla. 2009).  If the settlement of an employee's FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.  As Judge Gregory A. Presnell observed:

> [s]hort of a bench trial, the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the parties negotiate a compromise that is acceptable to both sides. The parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'

*Bonetti*, 715 F. Supp. 2d at 1227.  Judge Presnell further explained that, where the plaintiff's attorneys' fees are agreed upon without regard to the amount paid to the plaintiff, "then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney," the court should approve the settlement without separately evaluating the amount of the attorneys' fees for reasonableness. *Id.* at 1228.  Further, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement fair." *Mannino v. Anderson-Collins, Inc.*, No. 607-cv-1853, 2008 WL 2857061, at *2 (M.D. Fla. July 22, 2008) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see Siegenthaler v. Kane Furniture Co. of Ormond Beach, Inc.*, No. 607-cv-173, 2007 WL 1893906, at *2 (M.D. Fla. July 2, 2007) ("[A] settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995))).  "If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.  Rarely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010) (citation omitted); *see Thomas v. Port II*

*Seafood & Oyster Bar, Inc.*, No. 16-cv-0115, 2016 WL 5662032, at *2 (S.D. Ala. Sept. 29, 2016).

In short, courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1350, 1353 n.8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 WL 2399328, at *6.  Because the Settlement Agreement resolves a bona fide dispute as to each individual Plaintiff and was reached after vigorous arm's-length settlement negotiations, it should be approved.

This lawsuit clearly involves a dispute in which the Court may allow Plaintiffs in this action to settle and release their FLSA claims against Defendants.  First, the proposed settlement arises in an adversarial context, with pending litigation and with all Parties represented by competent counsel.  Indeed, each Party was represented by counsel with experience in litigating wage and hour claims on both an individual

and collective basis, and each counsel was obligated to and did vigorously represent their clients' rights.

Additionally, the FLSA claims asserted against Defendants involve bona fide disputes about FLSA liability, coverage, and damages and, consequently, the Settlement Agreement represents a reasonable compromise of the disputed issues. Plaintiffs claim that the named and opt-in Plaintiffs worked compensable overtime hours (over 40 hours in a workweek) for which Defendants did not pay appropriate overtime compensation.  Defendants maintain that Plaintiffs were employed as local delivery drivers in Atlanta, Georgia and paid a day rate for each day Plaintiffs worked. Assuming Plaintiffs worked overtime and were entitled to overtime wages (which Defendants assert such wages were either paid or that overtime was not due in the particular circumstance), Defendants argue that the applicable overtime premium is one-half Plaintiffs' regular rate. Plaintiffs, however, contend that they frequently worked more than 40 hours per workweek delivering packages for Defendants, that the day rate was, in fact, an hourly rate, and that Defendants failed to pay Plaintiffs any wages for the overtime hours Plaintiffs worked in violation of the FLSA. Plaintiffs also claim that Defendants failed to keep accurate time records of the hours Plaintiffs worked in violation of the FLSA, thus entitling Plaintiffs to estimate their unpaid wages as a matter of just and reasonable inference. *See*

*Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1946). Plaintiffs contend that they are entitled to all unpaid overtime wages, an equal amount in liquidated damages, as well as their attorney fees and costs as mandated by the FLSA.

Defendants, on the other hand, deny any liability or wrongdoing of any kind under the FLSA.  Specifically, Defendants maintain that Plaintiffs were provided detailed delivery routes to drive each day, that Defendants tracked the time each Plaintiff spent making deliveries, and that for the most part no Plaintiff worked more than 40 hours per week while employed as a local delivery driver and when they did, the Plaintiff was paid overtime wages. Furthermore, Defendants deny that Plaintiffs were ever discouraged from recording any overtime hours allegedly worked, and Defendants maintain that they possess data and other evidence showing that Plaintiffs were paid properly for all hours of work.

Additionally, Defendants contend that, even if Plaintiffs did work overtime hours, Plaintiffs' estimates of their allegedly unpaid hours of work are unrealistic, grossly exaggerated, and/or include time that is not legally compensable under the FLSA or any other applicable law.  Finally, Defendants Courier Connection, Inc. and John Lauth maintain that they are not properly named Defendants in this lawsuit and that Plaintiffs cannot maintain any claims against them because they were not Plaintiffs' employers under the FLSA.

Thus, there is a bona fide dispute between the Parties concerning liability, FLSA coverage of two named Defendants, and damages that could have impacted the outcome of this litigation. Neither side believes prevailing in the litigation is a certainty, either at the trial or appellate level.  Indeed, both Parties face risks if they continue to litigate this case. If Plaintiffs prove they worked unpaid overtime hours, Defendants risk exposure to damages for unpaid overtime wages, an equal amount in liquidated damages, and attorney's fees and costs that could exceed the amounts set forth in the Settlement Agreement. Conversely, if Plaintiffs fail to prove that they worked any overtime hours, and Defendants can present evidence that Plaintiffs were paid for all hours worked, Plaintiffs could receive nothing or significantly less than the amount provided in the Settlement Agreement. Accordingly, taking into account the uncertainty and risks inherent in this litigation for both Parties, and the cost and time which would be required to pursue the litigation further, the Parties have decided that it is desirable and beneficial to settle the litigation in the manner and under the terms set forth in their Settlement Agreement.

At mediation (and in pre and post mediation settlement discussions), the Parties and their counsel considered their competing evidence (including documents produced, data production, and data analyses) and legal arguments (including liability standards, defenses, and overtime computation methodologies), and

exchanged and presented competing potential damages calculations based on various assumptions and modeling scenarios.  With the assistance of a skilled mediator and through weeks of subsequent negotiations, the Parties compromised and negotiated a settlement, without Defendants admitting liability, to pay certain amounts to the thirty-two named and opt-in Plaintiffs.

The Parties arrived at the total amount to be paid to the Plaintiffs as follows: Plaintiffs estimate that they typically worked more than 10 hours per day delivering packages as local delivery drivers. Defendants disagree and argue that their data shows that Plaintiffs rarely, if ever, worked more than 10 hours per day and frequently worked far fewer than 10 hours per day, closer to 7.9 hours and 3.75 shifts per week on average. Despite their differences, and the arguments both parties presented in support of their respective positions at mediation and through subsequent negotiations, Defendants ultimately agreed to pay Plaintiffs $29,856.87 to settle Plaintiff's claims for alleged unpaid overtime hours. According to Plaintiffs' data and analysis, this amount compensates each Plaintiff for approximately 4 hours of overtime per workweek (plus liquidated damages) for any workweek in which a Plaintiff worked 4 days and 10 hours of overtime per workweek (plus liquidated damages) for any workweek in which a Plaintiff worked 5 days. Workweeks in which a Plaintiff worked fewer than 4 days were excluded from the calculations

because it is unlikely that a Plaintiff accumulated any overtime hours when a Plaintiff worked fewer than 4 days in a workweek.  Where records showed that certain opt-in Plaintiffs worked fewer than three workweeks with 4 or more days per week within the statutory period while employed as local delivery drivers or had no or de minimis potential overtime hours, those opt-in Plaintiffs will receive $50 under the settlement as consideration for any alleged unpaid overtime wages and liquidated damages. The Parties agree that $50 is fair and reasonable compensation for those opt-in Plaintiffs.

Named Plaintiff Terrick Sullivan and opt-in Plaintiff Darshell Rivers will also receive service awards in consideration for their assistance to Plaintiffs' counsel and the class throughout this litigation. Plaintiffs Sullivan and Rivers brought this case to Plaintiffs' counsel. Plaintiffs Rivers and Sullivan assisted Plaintiffs' counsel by identifying potential class members, identifying potential witnesses, producing documentary evidence, and served as counsel's point of contact for the class members throughout this litigation. Named Plaintiff Sullivan also attended a full-day mediation on behalf of the class, taking time off from his job and sacrificing his daily wages for the benefit of the class. In consideration for their efforts on behalf of the class members, Plaintiff Rivers will receive a service award of $1,000 and Named Plaintiff Sullivan will receive a $1,500 service award. The service awards

paid to Plaintiffs Rivers and Sullivan are fair and reasonable. *See George v. Academy Mortgage Corporation (UT)*, 369 F. Supp. 3d 1356, 1374 (N.D. Ga. 2019) (approving service payments to class members who served as named plaintiffs and provided invaluable services to plaintiffs' counsel and the class members.)

Accordingly, pursuant to the terms of the settlement, each Plaintiff who worked more than three weeks within the statutory period will receive an amount approximately equal to 4 overtime hours for each 4-day week, 10 overtime hours for each 5-day week, and an equal amount in liquidated damages. The amount that each Plaintiff will receive for alleged unpaid overtime wages and liquidated damages is shown in **Exhibit A** to the Settlement Agreement.

Plaintiffs believe that, given the risks of further litigation, this is a reasonable compromise over contested issues. Plaintiffs in this action have taken into account the uncertain outcome and risk of any litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs further recognize that there is the potential for a trier of fact to conclude that Plaintiffs are not entitled to any relief under the FLSA, or the amounts may be less than the amounts agreed to in the Settlement Agreement.

Defendants have denied and continue to deny that Plaintiffs are legally entitled to the relief agreed to in the Settlement Agreement. Defendants also have denied and continue to deny, *inter alia*, the allegations that all Plaintiffs have

suffered damages by reason of the alleged failure to pay overtime wages, or that all of the Plaintiffs were harmed by the conduct alleged in the Complaint and First Amended Complaint.  In fact, Defendants maintain that they have various factual and legal defenses that they could successfully assert in this action (or in separate actions filed by the named and opt-in Plaintiffs if the conditionally certified collective were decertified).   Nonetheless, Defendants have concluded that the further litigation of this action would be protracted and expensive, and that is desirable that the action be fully and finally settled pursuant to the terms and conditions in the Settlement Agreement in order to limit further expense, inconvenience, and distraction of continued litigation.

## ATTORNEYS' FEES AND COSTS

The Settlement Agreement provides for Plaintiffs' counsel to receive a reasonable amount of attorneys' fees, expenses and costs to resolve Plaintiffs' claims for fees and costs in the Complaint and First Amended Complaint.  After reaching an agreement on the amount to be paid to the named and opt-in Plaintiffs to settle their claims, the Parties separately negotiated, and Defendants agreed to pay to Plaintiffs' counsel attorneys' fees, expenses and costs in the total amount of $48,143.13.  Plaintiff's attorney's fees were determined by adhering to the terms of Plaintiffs' contingency fee agreement, which permits Plaintiffs' counsel to receive

the greater of either: (1) counsel's actual fees at their hourly rates; or (2) 40% of any sums recovered on Plaintiffs' behalf. In conformance with Plaintiffs' fee agreement, and without regard to the damages received by the Plaintiffs, Plaintiffs' counsel requested that Defendants pay their lodestar fees and expenses which counsel calculated by applying their customary hourly rates of $350 per hour for attorney Dustin L. Crawford (an associate at Parks Chesin and Walbert) and $425 per hour for attorney John L. Mays (a partner at Parks Chesin and Walbert).[1] Plaintiffs' counsel represent that they expended over 200 hours litigating this case on behalf of the class members over the course of more than 1 year and accumulated over $70,000 in attorney fees and expenses. After extensive negotiations over attorney fees, Defendants ultimately agreed to pay Plaintiffs' counsel $48,143.13 in attorney fees and costs, representing a significant discount from counsel's lodestar fees. Counsel agreed to accept approximately 30% less than their lodestar, and less than they would have requested in a contested fee petition, to facilitate settlement. The Parties agree that this compromise represents a fair and reasonable resolution of the amount of

---

[1] Counsels' rates have been approved by Courts in this District. *See, e.g., Kobelt et al. v. JBRE GA LLC, et al.*, No. 1-15-cv-1550-MHC (N.D. Ga. April 22, 2016) (approving FLSA settlement, including fee request based on attorney Crawford's rate of $350 per hour and attorney Mays' rate of $425 per hour); *see also Tye et al. v. HCBJR, LLC et al.*, No. 1:17-cv-01087-ELR (N.D. Ga. April 9, 2019) (determining attorney Crawford's rate of $350 per hour is reasonable).

attorneys' fees and costs and expenses sought by Plaintiffs and to be paid by Defendants.

Plaintiffs' counsel's requested fees and costs are also reasonable in light of the fact that a maximum amount of $78,000.00 to the named and opt-in Plaintiffs was obtained in spite of Defendants' vigorous defenses, including without limitation their defense that Defendants denied they had failed to pay overtime compensation to Plaintiffs, which would constitute a total defense to Plaintiffs' claims, and two of the three Defendants (Courier Connection, Inc. and John Lauth) denied they were Plaintiffs' employer.

Plaintiffs' counsel, who have extensive experience litigating FLSA collective actions, vigorously pursued claims on behalf of the entire class of Plaintiffs. Plaintiffs represent that pursuing these claims required Plaintiffs' counsel to locate and interview potential representative plaintiffs, communicate with each and every one of the 32 named and opt-in Plaintiffs in this case, calculate damages for each Plaintiff individually, and conduct legal research on a multitude of issues under the FLSA.

Finally, the Parties agreed that the amount allocated to Plaintiffs' counsel for attorneys' fees and costs is fair and reasonable in light of the litigation. The Parties advise the Court that the Plaintiffs' proposed attorneys' fees, expenses and costs to

be paid by Defendants under the Settlement Agreement are not based upon the amounts claimed to be owed to each Plaintiff.  Rather, the attorneys' fees and costs in this case were analyzed, reviewed, and negotiated in addition to – and completely separate from – the specific amounts recovered on behalf of each Plaintiff. As Judge Presnell explained in *Bonetti*, where

> the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiffs recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiffs' counsel. However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

715 F. Supp. 2d at 1228. Because damages and fees were negotiated separately, and the Defendants agree to pay an amount Plaintiffs' counsel is willing to accept, the Court need not engage in an independent analysis of the reasonableness of the attorney fees. *Id*. at 1227-28.

As recognized by the court in *Bonetti*, and confirmed by other Courts in this Circuit, if the Parties submit a proposed FLSA settlement that: (1) constitutes a compromise of the plaintiff's claims; (2) makes full disclosure of the terms of the settlement; and (3) represents that plaintiffs' attorney's fee was agreed upon

18

separately and without regard to the amount paid to the plaintiffs, then the court will approve the settlement without separately considering the reasonableness of the attorney fees. *Id*.[2] Indeed, "the FLSA does not require the court to assess the fairness of an agreed payment of attorney's fees in settling an individual action." *Helms v. Central Florida Regional Hosp*., No. 6:05-cv-383-Orl-22, 2006 WL 3858491 at \*3 (M.D. Fla. Dec. 26, 2006); *see Lynn's Food*, 679 F. 2d at 1354 (11th Cir. 1982). Finally, the fact that counsel's attorney fees exceed the total amount of damages to the Plaintiffs does not caution against awarding a reasonable fee. *See Millea v. Metro-North R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011); *see also Wales v. Jack M. Berry, Inc*., 192 F. Supp. 2d 1313 (M.D. Fla. 2001) (awarding over \$300,000 in attorneys' fees where the recovery was \$21,000).

---

[2] *See also Davis v. Addiction & Mental Health Services, Inc.*, No. 2-16-cv-01428-JHE, 2016 WL 6395290 at \*2 (N.D. Ala. Oct. 28, 2016) (in-depth review of attorney fees is unnecessary when parties agree to fees and damages separately); *Seda v. All Florida Appliance & AC, Inc.*, No. 8-15-cv-311-T-36MAP, 2015 WL 3652833 at \*3 (M.D. Fla. June 11, 2015) (because fees and damages were negotiated separately, there is no reason to question the reasonableness of the settlement); *Worley v. North Alabama Family Services, Inc.*, No. 4:12-vc-3458-JHE, 2014 WL 122435 (N.D. Ala. Jan, 13, 2014) (courts are not required to determine the reasonableness of attorney fees where fees and damages are negotiated separately); *Harris v. Waste Services of Alabama, LLC*, No. 2:17-cv-00531-JHE, 2017 WL 6498146 at \*2 (N.D. Ala. Dec. 19, 2017) (no analysis of attorney fees required where parties settle back pay and fees separately); *Wing v. Plann B Corp.*, No. 6-11-cv-1499-Orl-36GJK, 2012 WL 4746258, at \*4 (M.D. Fla. Sept. 17, 2012) (same).

Because attorney fees and damages to the Plaintiffs were negotiated separately, and because Plaintiffs' counsel is accepting a significant reduction from their lodestar amount to facilitate efficient resolution of this case, the fees Defendants agree to pay, and that Plaintiffs' counsel agrees to accept, are reasonable. For all of the previously stated reasons, Plaintiffs have benefited from Plaintiffs' counsel's efforts. In addition, Plaintiffs' counsel represents that, if the Court grants this Joint Motion and approves the Settlement Agreement, Plaintiffs' counsel will continue to provide legal advice to the Plaintiffs regarding the terms of the Settlement Agreement and will expend additional attorney time administering the settlement proceeds to the Plaintiffs over the eight-month payment term for which counsel will receive no additional compensation. All these factors warrant the Court approving the Parties' negotiated payment of Plaintiffs' attorneys' fees, expenses and costs in this matter.

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court approve the Parties' Joint Motion and enter the Proposed Order filed concurrently herewith.

Respectfully submitted this 26th day of July, 2019.

*/s/ Dustin L. Crawford*
Dustin L. Crawford
Georgia Bar No. 758916
Parks Chesin & Walbert
75 14th Street 26th Floor
Atlanta, Georgia 30309
404-873-8000
dcrawford@pcwlawfirm.com
Counsel for Plaintiffs

*/s/ Jessica M. Brown*
Kathryn S. McConnell
Georgia Bar No. 265509
kmcconnell@littler.com
Jessica M. Brown
Georgia Bar No. 722947
jmbrown@littler.com

LITTLER MENDELSON, P.C.
3344 Peachtree Road N.E. Suite 1500
Atlanta, GA 30326.4803
404.233.0330

Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| TERRICK SULLIVAN, *on behalf of himself and others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>COURIER CONNECTION, INC.; CC LAST MILE LLC; and JOHN F. LAUTH,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:17-cv-04655-MLB |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 26th day of July, 2019, the preceeding **MEMORANDUM OF LAW IN SUPPORT OF SECOND JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT AND DISMISSAL OF CASE WITH PREJUDICE** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including counsel of record as follows:

Dustin L. Crawford
dcrawford@pcwlawfirm.com

*/s/ Jessica M. Brown*
Jessica M. Brown
Georgia Bar No. 722947
Counsel for Defendants