# SETTLEMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

This Settlement Agreement and General Release of All Claims ("Agreement") is made by and between Terrick Sullivan ("Named Plaintiff") and the Opt-In Plaintiffs listed in Exhibit A (together, "Plaintiffs," or individually, a "Plaintiff"), and Courier Connection, Inc., CC Last Mile, LLC, and John Lauth (together, "Defendants") to resolve all of their disputes, including those that have been or could have been asserted in a civil action in any state or federal court. Plaintiffs and Defendants are collectively referred to herein as the "Parties," or individually as a "Party."

## RECITALS

This Agreement is made considering the following facts:

A. **WHEREAS**, the Named Plaintiff filed a lawsuit now pending against the Defendants in the United States District Court for the Northern District of Georgia, *Terrick Sullivan, on behalf of himself and others similarly situated v. Courier Connection, Inc., et al.*, Case No. 1:17-cv-04655-MLB, (the "Lawsuit") alleging that Defendants violated the Fair Labor Standards Act ("FLSA") 29 U.S.C. §201, *et seq*., and seeking damages for overtime compensation; and,

B. **WHEREAS**, Named Plaintiff and Defendants stipulated to conditional certification under the FLSA, and Opt-In Plaintiffs filed written consents to join the civil action after notice of the Lawsuit was sent to them; and

C. **WHEREAS,** Named Plaintiff and Opt-In Plaintiffs have in writing designated attorneys Dustin Crawford and John Mays of Parks, Chesin, and Walbert, P.C. ("Plaintiffs' Counsel") to represent them for all purposes in the Lawsuit, including entry into this Agreement; and

D. **WHEREAS**, Defendants have denied, and continue to deny, the validity of the claims and allegations asserted in the Lawsuit, deny that they are subject to any liability, and contend they have at all times complied with federal, state and local laws pertaining to the payment of wages and hours worked; and,

E. **WHEREAS,** the Parties agree that neither Plaintiffs nor Defendants will be considered prevailing parties in connection with the Lawsuit;

F. **WHEREAS,** the settlement provides Plaintiffs with full compensation for all of their claims in the Lawsuit; and,

G. **WHEREAS,** Plaintiffs' attorneys' fees and costs were agreed upon separately and without regard to the amount paid to Plaintiffs; and,

H. **WHEREAS,** Plaintiffs have voluntarily agreed to dismiss the Lawsuit, and any related matters, with prejudice; and,

I. **WHEREAS,** the Parties wish to resolve and settle their differences without engaging in further litigation, including but not limited to any and all wage claims and disputes by Plaintiffs against Defendants that were raised or could have been raised in the Lawsuit ("Settled Claims"); and,

J. **WHEREAS,** the Parties and their counsel have concluded that the terms of this Agreement are fair, reasonable, adequate and in the Parties' mutual best interests in light of the nature of the violations alleged, the risks inherent in litigation, and the stage of the Lawsuit.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1. **Recitals:** The Parties acknowledge that the "WHEREAS" clauses preceding Paragraph 1 are true and correct, and are incorporated herein as material parts to this Agreement.

2. **Definitions:** Throughout this Agreement, the term "Released Parties" (or individually, a "Released Party") shall include Courier Connection, Inc., CC Last Mile, LLC, John Lauth, and their respective current or former parents, subsidiaries, affiliates, divisions, predecessors, and successors, and all of their respective owners, founders, shareholders, investors, general or limited partners, directors, managers, officers, executives, supervisors, employees or former employees who exercised control over any operations or any terms and conditions of employment, agents, representatives, insurers, re-insurers, and attorneys, and any and all other persons, firms and entities in which Defendants may have an interest, as well as any persons acting by, through, under, or in concert with any of them, and all successors and assigns thereof.

3. **No Admission of Liability:** The Parties agree and acknowledge that this Agreement is the result of a compromise and that neither the Agreement nor any payment under the Agreement shall ever be construed as an admission by Defendants of any liability, wrongdoing, or responsibility on their part or on the part of any of the Released Parties. Defendants expressly deny any such liability, wrongdoing, or responsibility. It is expressly understood and agreed that neither Plaintiffs nor Defendants shall be deemed a "prevailing party" for the purposes of any fee-shifting statute, rule, or agreement. No Plaintiff shall represent to anyone that he or she, or the Plaintiffs, won the Lawsuit.

4. **Settlement Payment:** As consideration for Plaintiffs signing this Agreement and their compliance with the promises made herein, as set forth below, Defendants agree to pay Plaintiffs a total of SEVENTY-EIGHT THOUSAND DOLLARS AND NO CENTS ($78,000.00), less any applicable withholdings, taxes, or liens (the "Settlement Payment") as follows:

    a. Defendants shall issue payment to Plaintiffs in the aggregate gross sum of $12,878.44 representing alleged unpaid wages, less applicable taxes and deductions, with each Plaintiff receiving an amount payable to that Plaintiff in accordance with the "wage" amounts stated in Exhibit A, of which payment to each Opt-In Plaintiff is expressly conditioned upon the Opt-In Plaintiff executing the release and substitute IRS Form W-9 attached as Exhibit B, and for which Defendant Courier Connection, Inc. will issue an IRS Form W-2 to each Plaintiff; and,

    b. Defendants shall issue payment to Plaintiffs in the aggregate gross sum of $12,878.43 representing alleged liquidated damages, with each Plaintiff receiving an amount

payable to that Plaintiff in accordance with the "non-wage" amounts stated in Exhibit A, of which payment to each Opt-In Plaintiff is expressly conditioned upon the Opt-In Plaintiff executing the release and substitute IRS Form W-9 form attached as Exhibit B, and for which Defendant Courier Connection, Inc. will issue an IRS Form 1099 to each Plaintiff; and,

c. Defendants shall issue payment to Plaintiffs in the aggregate gross sum of $1,600.00 representing consideration for the general release, with each Plaintiff receiving $50.00 payable to that Plaintiff, of which payment to each Opt-In Plaintiff is expressly conditioned upon the Opt-In Plaintiff executing the release and substitute IRS Form W-9 form attached as Exhibit B, and for which Defendant Courier Connection, Inc. will issue an IRS Form 1099 to each Plaintiff; and,

d. Defendants shall issue payment to the Named Plaintiff in the gross sum of $1,500.00 and to Plaintiff Darshell Rivers in the gross sum of $1,000.00 representing service awards for their assistance to Plaintiffs' Counsel and the class throughout the Lawsuit, of which payment to Plaintiff Rivers is expressly conditioned upon Plaintiff Rivers executing the release and substitute IRS Form W-9 form attached as Exhibit B, and for which Defendant Courier Connection, Inc. will issue an IRS Form 1099 to the Named Plaintiff and to Plaintiff Rivers; and,

e. Defendants shall issue payment in the amount of $48,143.13 payable to Parks, Chesin & Walbert, P.C., as attorneys' fees and costs, for the work performed by the firm on behalf of Plaintiffs in connection with the Lawsuit. Defendant Courier Connection, Inc. will issue Parks, Chesin & Walbert, P.C. an IRS Form 1099 for this amount. Defendant Courier Connection, Inc. also will include the amount paid to Parks, Chesin & Walbert, P.C. on the IRS Form 1099 issued to each Plaintiff in proportion to his or her share of the aggregate gross sums paid to Plaintiffs under Paragraphs 4(a)-(d).

f. Defendants' payment of the consideration identified in Paragraph 4 is expressly conditioned on the occurrence of the following conditions precedent: (1) Defendants' counsel has received a copy of this Agreement appropriately signed and dated by the Named Plaintiff and by Plaintiffs' Counsel on behalf of the Opt-In Plaintiffs; (2) Defendants' counsel has received an IRS Form W-9 fully executed by the Named Plaintiff and an IRS Form W-9 fully executed by Plaintiffs' Counsel; and (3) the Court has entered final judgment following dismissal of the Lawsuit with prejudice. This Agreement shall not become effective, and none of the benefits set forth in Paragraph 4 will become due or payable, until the Effective Date of this Agreement (the "Effective Date" defined as the first day after the last of the above conditions precedent has occurred). For each Opt-In Plaintiff, entitlement to receive any of the consideration identified in Paragraph 4 is additionally conditioned on the Opt-In Plaintiff's execution of the release and substitute IRS Form W-9 attached as Exhibit B.

g. Defendants shall mail the checks for the aggregate consideration payable to Plaintiffs under Paragraph 4(a)-(d) to Plaintiffs' Counsel in approximately equal installments every thirty (30) days over eight (8) months, with the first installment provided no later than fourteen (14) business days after the Effective Date. Plaintiffs' Counsel shall propose, and the Parties shall cooperate in finalizing, fair and reasonable allocations of

the eight (8) monthly installments to the checks payable to Plaintiffs. Plaintiffs' Counsel shall hold the checks for Plaintiffs' benefit and distribution. Plaintiffs' Counsel shall not distribute any check to an Opt-In Plaintiff until the Opt-In Plaintiff has executed the release and substitute IRS Form W-9 attached as Exhibit B. Plaintiffs' Counsel shall provide each release and substitute IRS Form W-9 executed by an Opt-In Plaintiff to Defendants' counsel within three (3) business days of receipt by Plaintiffs' counsel of the executed forms. Plaintiffs' Counsel shall keep a record of the date(s) when each Plaintiff received in person or was mailed each check and shall provide such record to Defendants' counsel upon request. Each Plaintiff will have ninety (90) calendar days from the date(s) of in-person receipt or mailing of a check to cash or otherwise negotiate his or her check. In the event any Plaintiff does not cash or otherwise negotiate his or her check by such time, or does not execute the release within 90 days of Plaintiffs' Counsel receiving the check, the payment becomes stale and each such payment becomes the property of Defendant Courier Connection, Inc. Within ten (10) calendar days of the payment becoming stale, each stale check in Plaintiffs' Counsel's control or custody shall be either returned to Defendants' counsel or certified as destroyed by Plaintiffs' Counsel to Defendants' counsel.

h. Defendants shall mail the consideration identified in Paragraph 4(e) to Plaintiffs' Counsel every thirty (30) days over eight (8) months in approximately equal monthly installments. Defendants shall issue the first installment no later than fourteen (14) business days after the Effective Date.

i. The Settlement Payment shall be paid in resolution of all claims Plaintiffs have, might have, or believe they have against the Released Parties as of the date the Named Plaintiff and Plaintiffs' Counsel, on behalf of the Opt-In Plaintiffs, sign this Agreement. The Settlement Payment shall be inclusive of Plaintiffs' attorneys' fees, expenses, and costs. Plaintiffs and Defendants agree to bear their own fees and costs in connection with any other work required for completion of the settlement and the dismissal of the Lawsuit. Each Plaintiff specifically acknowledges that the Settlement Payment constitutes full and complete payment for all amounts owed by Defendants with respect to his or her claims in the Lawsuit and all Released Claims as of the date the Named Plaintiff and Plaintiffs' Counsel, on behalf of the Opt-In Plaintiffs, sign this Agreement.

5. **Valid Consideration:** Plaintiffs understand and agree that they would not receive the monies and/or benefits specified in Paragraph 4 but for execution of this Agreement by the Named Plaintiff and by Plaintiffs' Counsel on behalf of the Opt-In Plaintiffs, and but for the fulfillment of the promises contained herein. Each Plaintiff further agrees and acknowledges that he or she authorizes and approves of the allocation of the above-described consideration. Except as stated in Paragraph 4 of this Agreement, Plaintiffs shall not be entitled to any compensation, remuneration, benefits or other payments from Defendants as a result of the Lawsuit or in connection with any of the Released Claims, and the Parties shall be responsible for payment of their own costs and attorneys' fees in the Lawsuit. Plaintiffs agree that the consideration specified in this Agreement is sufficient to support the promises contained herein.

6. **No Additional Entitlement By Plaintiffs To Attorneys' Fees**: Each Plaintiff hereby states that he or she has been represented only by Parks, Chesin & Walbert, P.C.in the Lawsuit. Each Plaintiff agrees that the amounts set forth in Paragraph 4 of this Agreement include all amounts

that Defendants have agreed to pay as his or her attorneys' fees to his or her attorney, as named above in Paragraph 4, or to any other attorneys who have represented or provided any services on his or her behalf in the Lawsuit, or any matters related or pertaining thereto and/or to the Released Claims. Each Plaintiff acknowledges that this Agreement does not require Defendants to pay any other attorneys' fees that he or she has incurred in connection with the Lawsuit, or any other matters related or pertaining thereto and/or to the Released Claims. Each Plaintiff agrees to indemnify Defendants for any valid attorneys' lien claims that any Defendant is required to pay in connection with any claims or causes of action that Plaintiff did bring or may have brought against any Defendant.

7. **Plaintiffs' General Release of Claims:** In exchange for, and in consideration of, the payments, benefits, mutual obligations, and other commitments under this Agreement, each Plaintiff, for himself or herself, and each of his or her heirs, executors, administrators, partners, agents, servants, employees, successors, assigns, and affiliates hereby knowingly and voluntarily fully, finally, and forever releases and discharges the Released Parties of and from all claims, demands, actions, causes of action, suits, damages, losses and expenses, of any and every nature whatsoever, known or unknown, fixed or contingent, suspected or unsuspected, arising under state, federal or local law or common law, as a result of actions or omissions occurring up to and including the date the Named Plaintiff and Plaintiffs' Counsel, on behalf of the Opt-In Plaintiffs, sign this Agreement ("Released Claims").

    a. Specifically included in this waiver and release are any and all claims related to an alleged failure by any Released Party to properly pay any Plaintiff for all time worked and/or work performed, including wages of any kind or nature whatsoever, known or unknown, fixed or contingent, suspected or unsuspected, arising under state, federal or local law or common law, including but not limited to, overtime, on-call pay, bonuses, commissions, benefits (paid and unpaid), business expense reimbursements, and other payments of any kind, whether those claims are based on any alleged breach of a duty arising in contract or tort, any alleged unlawful act, any other claim or cause of action, and regardless of the forum in which the claims might be brought.

    b. Any and all known and unknown wage or wage-related retaliation claims arising under the FLSA, and all of its implementing regulations, any other state or local statute, ordinance, or regulation governing wages or payment of wages, and the common law of Georgia, now or hereafter recognized, as well as all claims for attorneys' fees, interest, expenses and costs, including those related to the Lawsuit and/or to the Settled Claims.

    c. Also specifically included in this waiver and release are any and all claims of alleged employment discrimination or retaliation, either as a result of the separation of any Plaintiff's employment or otherwise, under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, any employment or wrongful discharge provision of Georgia law, any other federal, state or local statute, rule, ordinance or regulation, as well as any claims for alleged wrongful discharge, negligent or intentional infliction of emotional distress, breach of contract, fraud or any other unlawful behavior, the existence of which is specifically denied by Defendants. All such claims, including related attorneys' fees and costs, are forever barred by this Agreement without regard

  to whether those claims are based on any alleged breach of a duty arising in contract or tort; any alleged unlawful act, any other claim or cause of action; and regardless of the forum in which they might be brought.

d. Each Plaintiff further forgoes any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted, could have been asserted or settled in any legal action that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any individual or any state or local governmental agency against the Released Parties.

This Agreement does not release any Plaintiff's claims, if any, that are not waivable as a matter of law and/or that cannot be released by private agreement. This Agreement does not waive claims that any Plaintiff could make, if available, for unemployment or workers' compensation. Nothing in this Agreement is intended to waive any Plaintiff's entitlement to <u>vested</u> benefits under any pension or 401(k) plan or other ERISA-governed benefit plan provided by any Released Party.

Finally, nothing in this Agreement, including but not limited to the release of claims, prevents any Plaintiff from filing a charge or complaint with, or from participating in, an investigation or proceeding conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board, the Securities and Exchange Commission, the Occupational Health and Safety Administration, or any other federal, state or local agency charged with the enforcement of any laws; although, by signing this Agreement, each Plaintiff is waiving his or her rights to recover any individual relief (including any back pay, front pay, reinstatement or other legal or equitable relief) based on claims asserted in such a charge or complaint or other proceeding brought by any Plaintiff or on his or her behalf by any third party, except for any right the Plaintiff may have to receive an award from a government agency (and not the Released Parties) for information provided to the government agency, or where such a waiver of individual relief is prohibited.

8. <u>**Indemnification of Tax Issues:**</u> Plaintiffs are not relying on any information provided by Defendants, their employees, their agents, or their attorneys concerning the tax consequences of payments made under this Agreement. Each Plaintiff acknowledges and agrees that he or she is solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, which may, at any time, be found to be due upon or as a result of any amount that is paid by Defendants under this Agreement. Each Plaintiff agrees to indemnify, defend, and hold Defendants and the Released Parties harmless from any claims, liabilities, demands, penalties, interest, deficiencies, levies, assessments, executions, judgments, or recoveries asserted against any of the Released Parties for any taxes, related penalties and/or interests relating to the manner in which payments of the Settlement Payment are allocated and paid under this Agreement, and for any costs, expenses, fees (including attorneys' fees), or damages sustained by any of the Released Parties by reason of any such claims. In the event that Plaintiffs receive written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made

against Defendants, Plaintiffs shall promptly, after receipt of such written notice, notify Defendants by letter or email sent to counsel for Defendants.

9. **Affirmations:** Plaintiffs represent and affirm that, other than the Lawsuit referenced herein, they have no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Defendants with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board. Plaintiffs further represent and affirm as a material term of this Agreement that, except as provided for in this Agreement, each Plaintiff has been paid and/or received all compensation, wages, bonuses, commissions, and/or benefits to which he or she may be entitled from Defendants or due for services he or she performed for Defendants, and that no compensation, wages, bonuses, commissions, and/or benefits from Defendants or due for services he or she performed for Defendants are due to him or her. Each Plaintiff further affirms that he or she has not been retaliated against for reporting any allegations of wrongdoing by Defendants or their respective officers.

10. **No Further Employment:** Each Plaintiff (other than Ravon Lewis) acknowledges that his or her employment with Defendants has ended, and each Plaintiff (other than Ravon Lewis) permanently, unequivocally, and unconditionally waives any and all rights he or she may now have, may have had in the past, or may have in the future to obtain or resume employment with Defendants. Plaintiffs agree never to apply for employment with Defendants in the future. In the event that any Plaintiff is ever mistakenly employed by Defendants, other than with respect to Ravon Lewis's current employment, each such Plaintiff agrees to resign his or her employment with no resulting claim or cause of action against Defendants or any of the Released Parties.

11. **No Assignment:** Each Party represents and warrants that no person other than the signatory for such Party had or has any interest in the matters referred to in this Agreement, that such Party has the sole right and exclusive authority to execute this Agreement, and that such Party has not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this Agreement.

12. **Governing Law and Jurisdiction:** This Agreement shall be deemed to be made and entered into in the State of Georgia, and shall in all respects be interpreted, enforced, and governed under the laws of Georgia without giving effect to any conflict of laws principles. The Parties expressly consent to the exclusive jurisdiction and exclusive venue of the United States District Court for the Northern District of Georgia (the "Court"), or, if the Court refuses jurisdiction or deems venue to be improper, in any court of competent jurisdiction in Georgia.

13. **Headings:** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provisions.

14. **Modification of Agreement:** This Agreement may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Plaintiffs agree not to make any claim at any time or place that this Agreement has been verbally modified in any respect whatsoever. No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the Party against whom such waiver is charged.

15. **Interpretation:** The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This Agreement has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the Agreement.

16. **Severability:** Except as otherwise provided in this Paragraph, if any provision of this Agreement shall be finally determined to be invalid or unenforceable by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement. If Paragraph 7 of this Agreement is deemed invalid or unenforceable, in whole or in part, by a court of competent jurisdiction, this entire Agreement shall be null and void, and any payments made by or on behalf of the Defendants shall be repaid immediately.

17. **Binding Nature of Agreement:** This Agreement shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each Party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

18. **Prevailing Party:** In the event any Party or a Released Party takes legal action to enforce any of the terms and conditions or provisions of this Agreement, or for any breach thereof, or for use of this Agreement as a defense to any claims brought by any Party, the prevailing party on that issue shall be entitled to costs and reasonable attorneys' fees, including all costs and attorneys' fees related to demonstrating the amount and/or reasonableness of such fees, in addition to any other relief to which the prevailing party may be entitled.

19. **Opportunity to Review:** Plaintiffs acknowledge they are aware that they are giving up all claims they have or may have against the Released Parties. They acknowledge that Defendants advise they consult with an attorney and that they have had the opportunity to seek legal advice before executing this Agreement. Each Plaintiff acknowledges he or she has in fact consulted with his or her counsel, Parks, Chesin & Walbert, P.C., before executing this Agreement.

20. **Entire Agreement:**  This Agreement sets forth the entire agreement and understanding between the Parties, and supersedes any prior oral or written agreements or understandings between them pertaining to the subject matter hereof. The Parties acknowledge that they are not relying upon any representations, promises, or agreements to enter into this Agreement, except for those set forth in this Agreement.

21. **Signatures in Counterparts:** This Agreement may be executed in one or more counterparts, all of which together shall constitute one Agreement, and each of which separately shall constitute an original document. A facsimile signature or a signature scanned and sent by electronic mail shall have the same force and effect as an original signature.

22. **Selective Enforcement:** The Parties agree that the failure of any Party to enforce or exercise any right, condition, term, or provision of this Agreement shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

IN WITNESS WHEREOF, the Parties knowingly and voluntarily execute this Agreement as of the date set forth below:

Dated: Jul 26, 2019 ______________________

Terrick Sullivan (Jul 26, 2019)
**Terrick Sullivan**

Dated: 7/26/19 ______________________

**Dustin Crawford, Esq.**
**Parks, Chesin, and Walbert, P.C.**
On behalf of the Opt-In Plaintiffs

Dated: 7/26/19 ______________________

**John Mays, Esq.**
**Parks, Chesin, and Walbert, P.C.**
On behalf of the Opt-In Plaintiffs

**Courier Connection, Inc.**

Dated: 7/26/2019 By: DocuSigned by: [signature] F10E3021356C490...

President and Chief Executive Officer

**CC Last Mile, LLC**

Dated: 7/26/2019 By: DocuSigned by: [signature] F10E3021356C490...

President and Chief Executive Officer

Dated: 7/26/2019 DocuSigned by: [signature] F10E3021356C490...

**John F. Lauth**

# EXHIBIT A

| *Plaintiff Type* | *Last Name* | *First Name* | *Total Payments* | *Wages* | *Non-Wages* | *General Release* | *Service Awards* |
|---|---|---|---|---|---|---|---|
| Named Plaintiff | Sullivan | Terrick | $ 2,041.79 | $ 245.90 | $ 245.89 | $ 50.00 | $ 1,500.00 |
| Opt-In Plaintiff | Akintunde | Abidemi | $ 639.56 | $ 294.78 | $ 294.78 | $ 50.00 | $ - |
| Opt-In Plaintiff | Ashby | Winifred | $ 659.56 | $ 304.78 | $ 304.78 | $ 50.00 | $ - |
| Opt-In Plaintiff | Balfour | Donald | $ 518.23 | $ 234.12 | $ 234.11 | $ 50.00 | $ - |
| Opt-In Plaintiff | Bobo | Makesha | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Brown | Dexter | $ 565.34 | $ 257.67 | $ 257.67 | $ 50.00 | $ - |
| Opt-In Plaintiff | Buckley | Trevante | $ 1,790.25 | $ 870.13 | $ 870.12 | $ 50.00 | $ - |
| Opt-In Plaintiff | Bush | Shameka | $ 706.68 | $ 328.34 | $ 328.34 | $ 50.00 | $ - |
| Opt-In Plaintiff | Campbell | Shania | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Crawford | Tranorris | $ 2,920.94 | $ 1,435.47 | $ 1,435.47 | $ 50.00 | $ - |
| Opt-In Plaintiff | Davis | Teresa | $ 918.68 | $ 434.34 | $ 434.34 | $ 50.00 | $ - |
| Opt-In Plaintiff | Gandonu | Mausi | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Goddard | Bryan | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Hodge | Shalethia | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Johnson | Jamal | $ 2,544.04 | $ 1,247.02 | $ 1,247.02 | $ 50.00 | $ - |
| Opt-In Plaintiff | Jordan | Patrice | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Larsen | Oscar | $ 541.79 | $ 245.90 | $ 245.89 | $ 50.00 | $ - |
| Opt-In Plaintiff | Lewis | Ravon | $ 1,554.69 | $ 752.35 | $ 752.34 | $ 50.00 | $ - |
| Opt-In Plaintiff | Lopez | Manuel | $ 1,413.36 | $ 681.68 | $ 681.68 | $ 50.00 | $ - |
| Opt-In Plaintiff | McLean | Shavonna | $ 1,908.03 | $ 929.02 | $ 929.01 | $ 50.00 | $ - |
| Opt-In Plaintiff | Mickins | Valerie | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Rivers | Darshell | $ 1,188.45 | $ 69.23 | $ 69.22 | $ 50.00 | $ 1,000.00 |
| Opt-In Plaintiff | Rosendary | Tasha | $ 730.23 | $ 340.12 | $ 340.11 | $ 50.00 | $ - |
| Opt-In Plaintiff | Ross | Jacqueline | $ 1,413.36 | $ 681.68 | $ 681.68 | $ 50.00 | $ - |
| Opt-In Plaintiff | Ross | Walter | $ 3,203.61 | $ 1,576.81 | $ 1,576.80 | $ 50.00 | $ - |
| Opt-In Plaintiff | Sapp | Freddie | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| Opt-In Plaintiff | Smith | Talia | $ 683.12 | $ 316.56 | $ 316.56 | $ 50.00 | $ - |
| Opt-In Plaintiff | Smith | Brandon | $ 706.68 | $ 328.34 | $ 328.34 | $ 50.00 | $ - |
| Opt-In Plaintiff | Spears | Destinee | $ 282.67 | $ 116.34 | $ 116.33 | $ 50.00 | $ - |
| Opt-In Plaintiff | Thomas | D'Andre | $ 1,036.46 | $ 493.23 | $ 493.23 | $ 50.00 | $ - |
| Opt-In Plaintiff | Walton | Henri | $ 989.35 | $ 469.68 | $ 469.67 | $ 50.00 | $ - |
| Opt-In Plaintiff | Watkins | LeVante | $ 100.00 | $ 25.00 | $ 25.00 | $ 50.00 | $ - |
| | | | | | | Payments to Plaintiffs: | $ 29,856.87 |
| | | | | | | Attorneys' Fees and Costs: | $ 48,143.13 |
| | | | | | | Total Settlement Amount: | $ 78,000.00 |

# EXHIBIT B

# OPT-IN PLAINTIFF ACKNOWLEDGEMENT AND RELEASE

This Opt-In Plaintiff Acknowledgment and Release ("Release") is by and between ______________________________ ("Opt-In Plaintiff") and Courier Connection, Inc., CC Last Mile, LLC, and John Lauth ("Defendants").

**WHEREAS**, Defendants and Opt-In Plaintiff are parties to a conditionally certified collective action before the United States District Court for the Northern District of Georgia, styled *Terrick Sullivan, et al. v. Courier Connection, Inc., et al.*, Case No. 1:17-cv-04655-MLB (the "Lawsuit"); and

**WHEREAS**, Plaintiff Terrick Sullivan and all opt-in plaintiffs, including Opt-In Plaintiff, who filed written consents to join the Lawsuit after receiving notice of the Lawsuit have in writing designated attorneys Dustin Crawford and John Mays of Parks, Chesin, and Walbert, P.C. to represent them for all purposes in the Lawsuit, including for settlement; and

**WHEREAS**, the parties to the Lawsuit (including the opt-in plaintiffs) entered into a Settlement Agreement and General Release of All Claims ("Agreement") on July 26, 2019, whereby Defendants, without admitting any liability, agreed to make the Settlement Payment (as defined in the Agreement) to Opt-In Plaintiff and the other opt-in plaintiffs, delivery of which is expressly conditioned upon execution of this Release and the attached substitute W-9 form.

**NOW THEREFORE**, Opt-In Plaintiff hereby acknowledges, reaffirms, and agrees to the release of claims set forth in the Agreement (and as detailed below), in consideration for delivery of the portion of the Settlement Payment to which Opt-In Plaintiff is entitled, and for other good and valuable consideration:

**<u>Plaintiffs' General Release of Claims:</u>** In exchange for, and in consideration of, the payments, benefits, mutual obligations, and other commitments under the Agreement, each Plaintiff, for himself or herself, and each of his or her heirs, executors, administrators, partners, agents, servants, employees, successors, assigns, and affiliates hereby knowingly and voluntarily fully, finally, and forever releases and discharges Courier Connection, Inc., CC Last Mile, LLC, John Lauth, and their respective current or former parents, subsidiaries, affiliates, divisions, predecessors, and successors, and all of their respective owners, founders, shareholders, investors, general or limited partners, directors, managers, officers, executives, supervisors, employees or former employees who exercised control over any operations or any terms and conditions of employment, agents, representatives, insurers, re-insurers, and attorneys, and any and all other persons, firms and entities in which Courier Connection, LLC, CC Last Mile, LLC, and John Lauth may have an interest, as well as any persons acting by, through, under, or in concert with any of them, and all successors and assigns thereof (the "Released Parties") (or individually, a "Released Party") of and from all claims, demands, actions, causes of action, suits, damages, losses and expenses, of any and every nature whatsoever, known or unknown, fixed or contingent, suspected or unsuspected, arising under state, federal or local law or common law, as a result of actions or omissions occurring up to and including the date the Named Plaintiff and Plaintiffs' Counsel, on behalf of the Opt-In Plaintiffs, sign the Agreement.

a. Specifically included in this waiver and release are any and all claims related to an alleged failure by any Released Party to properly pay any Plaintiff for all time worked and/or work performed, including wages of any kind or nature whatsoever, known or unknown, fixed or contingent, suspected or unsuspected, arising under state, federal or local law or common law, including but not limited to, overtime, on-call pay, bonuses, commissions, benefits (paid and unpaid), business expense reimbursements, and other payments of any kind, whether those claims are based on any alleged breach of a duty arising in contract or tort, any alleged unlawful act, any other claim or

cause of action, and regardless of the forum in which the claims might be brought.

b. Any and all known and unknown wage or wage-related retaliation claims arising under the FLSA, and all of its implementing regulations, any other state or local statute, ordinance, or regulation governing wages or payment of wages, and the common law of Georgia, now or hereafter recognized, as well as all claims for attorneys' fees, interest, expenses and costs, including those related to the Lawsuit and/or to the Settled Claims.

c. Also specifically included in this waiver and release are any and all claims of alleged employment discrimination or retaliation, either as a result of the separation of any Plaintiff's employment or otherwise, under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family Medical Leave Act, any employment or wrongful discharge provision of Georgia law, any other federal, state or local statute, rule, ordinance or regulation, as well as any claims for alleged wrongful discharge, negligent or intentional infliction of emotional distress, breach of contract, fraud or any other unlawful behavior, the existence of which is specifically denied by Defendants. All such claims, including related attorneys' fees and costs, are forever barred by the Agreement without regard to whether those claims are based on any alleged breach of a duty arising in contract or tort; any alleged unlawful act, any other claim or cause of action; and regardless of the forum in which they might be brought.

d. Each Plaintiff further forgoes any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted, could have been asserted or settled in any legal action that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any individual or any state or local governmental agency against the Released Parties.

The Agreement does not release any Plaintiff's claims, if any, that are not waivable as a matter of law and/or that cannot be released by private agreement. The Agreement does not waive claims that any Plaintiff could make, if available, for unemployment or workers' compensation. Nothing in this Agreement is intended to waive any Plaintiff's entitlement to vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan provided by any Released Party.

Finally, nothing in this Agreement, including but not limited to the release of claims, prevents any Plaintiff from filing a charge or complaint with, or from participating in, an investigation or proceeding conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board, the Securities and Exchange Commission, the Occupational Health and Safety Administration, or any other federal, state or local agency charged with the enforcement of any laws; although, by signing this Agreement, each Plaintiff is waiving his or her rights to recover any individual relief (including any back pay, front pay, reinstatement or other legal or equitable relief) based on claims asserted in such a charge or complaint or other proceeding brought by any Plaintiff or on his or her behalf by any third party, except for any right the Plaintiff may have to receive an award from a government agency (and not the Released Parties) for information provided to the government agency, or where such a waiver of individual relief is prohibited.

**ACCEPTED AND AGREED:**

Dated: ______________________________ ________________________________________

Opt-In Plaintiff

## SUBSTITUTE W-9 FORM

**In order to receive a settlement payment, you must complete the below substitute W-9 information and deliver it to your counsel, Parks, Chesin, and Walbert, P.C.**

**Substitute W-9**
**Taxpayer Identification Number Certification**

Enter your Social Security Number (taxpayer identification number): ____________

Print name as shown on your income tax return:

_______________________________________________________________

First Name Middle Initial Last Name

_______________________________________________________________

Address

_______________________________________________________________

City State Zip Code

Under penalties of perjury, I certify that:

1. The taxpayer identification number shown on this form is my correct taxpayer identification number, **and**
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, **and**
3. I am a U.S. citizen or other U.S. person (including a U.S. resident alien).

**Note:** If you have been notified by the IRS that you are subject to backup withholding, you must cross out item 2 above.

Signature of U.S. Person: _________________________________ Date: _________